Our next case is case number 419-0248. For the appellant, we have Ms. Watson. For the affilee, we have Mr. Sheets. And you're Mr. Sheets, and I'm Mr. Hanauer. I work with Ms. Sheets. All right, thank you. And the case is Cheryl Stinauer v. Motley Stinauer.  Thank you, Mr. Hanauer. Your Honors, we are here today on the appeal of an order of protection. In this particular case, the order of protection between a daughter-in-law and a mother-in-law. When reviewing orders of protection, there are primarily two areas of focus when we review those. The first area of focus can be articulated as whether or not the relationship between the parties would give rise to the request for order of protection. That's not an issue we're exploring. The second issue that's generally reviewed in reviewing an order of protection is whether or not the person who is asking for the order of protection qualifies as the first person under the act. That is an issue here today. And the third issue that's usually reviewed on an order of protection is, is the OP necessary? Meaning, without the order of protection, will the requesting party suffer liable harm or continue to abuse? That is an issue here today. Interestingly enough, is that issue, I would argue, become that first requirement by the court was not met. The statute very clearly articulates that the court must make required findings in its ruling. And those required findings that it must set forth as a quote, minimum, are three things. First, the court must articulate that it considered the relevant factors as described in the statute. That, in the case of harm, was not done. The second thing that the trial court must set forth in its order, at a minimum, is whether the conduct or the action of the respondent, unless prohibited, is likely to cause irreparable harm or continued abuse. That also was not set forth in the case of harm. Thirdly, the trial court must set forth, at a minimum, whether it's necessary to grant the order of protection, to protect the petitioner in the future. That also, Your Honors, was not set forth in the trial order in question. Normally, when we have orders of protection, we have the full forms, they have check boxes for the trial court. We didn't have that in this case. We have a little more than one page order, with some wording by the court, and that's it. In this particular case, that wording, Your Honors, was insufficient to meet the minimum standards that's been required by the trial court to set forth in its order. And the case law on that particular issue has been interesting. And it's developed over the past almost two decades, starting in 1993. In 1993... Counsel, I have a couple questions for you. At the request for the emergency order of protection, at that point, did the trial court make findings and take evidence? The only evidence that was taken, Your Honor, was the ex parte oral questioning from the petitioner. Under oath, correct. Under oath, Your Honor. And then the court made some findings with respect to its issuance of the emergency order, the ex parte order. Yes, Your Honor. Can we consider those in any way in looking at whether or not we should determine that because maybe the necessary findings weren't made for the plenary? Can we look at those from the emergency order? There are varying case law on that particular issue, Your Honor. There's some case law that says yes, and some case law that says no. Okay. The more recent case law articulates that if the court had articulated in some manner in the final order, that those findings in the emergency order of protection are going to be continued in effect in the plenary O.P. That's the way it's defined. Perhaps you could consider that. But we don't even have that wording in the particular order of law. Okay. And then my next question is we know that there is specific language that tells us we are to liberally construe this statute in an effort to achieve what it's seeking to achieve, protection of people, avoiding people being abused, and that type of thing. How does that come into play in determining if we say, well, the judge didn't make the necessary factual findings, but we're to liberally construe, where does that leave us? Yes, ma'am. Great question. My response would be that the statute has been amended a number of times in order to make specific requirements of the trial court that it must set forth ad minimumum, and that is the plain meaning of the statute. And the purpose of the order of protection can't be so broadly construed to obviate the specific requirements that's been enumerated in the statute. And in this particular case, this particular portion of the statute, it has been amended a number of times making further requirements of the trial court what it must set forth, quote, ad minimumum, which it did not. Is the issue on appeal of the order from the trial court in March 2019, when the court conducted what looks like kind of a combined hearing? Yes, sir. Well, has the court made several findings in that order? Did it not enter the written order? Yes, sir. It's three findings of that from the trial of the order of protection. You're correct, sir. Perfect. Go ahead. Thank you, sir. And you bring up a good point, Judge Kennedy, because if the court had enumerated, ad minimumum, the specific requirement that's required to do, we might know more how or if the merits of the case can be flushed out of the statute. But because the trial court didn't do that, it makes it very difficult to articulate whether or not these findings of that are sufficient in statute or requirements that are at mark for the court. The failing to do so is part of the reason why that various courts over the last two decades have articulated that the court must make these findings specifically on the record ad minimumum, which has not been done. And the consistency of the Apollo case law, going back to 1993, clearly articulates that it is reversible error. The court must reverse the OP if the statutory requirements are not set forth in the order that's issued in the merit order of protection. And that, Your Honors, brings me to my next point. Not only did the trial court fail to articulate the minimums that are required by a statute, and specifically you're talking about the requirements of 214C, that it considered the relevant factors that the conduct was likely to cause irreparable harm or continued abuse, and that it was necessary to grant the request of relief to protect the petitioner. Yes, ma'am. Okay. Absolutely. You are absolutely correct. And in case of harm, you don't have the articulation of the factors that the court considered, or even a general statement that, hey, I considered all the relevant factors of the statute. A lot of times when we have the orders, we even have that in general catch-all language of every one of those three factors. And now there's even a form that the statute can say it's there, but we don't even have that in this case. And if we had had it, if the court had gone through that process, we may not be here. And I say that boldly because if the court had fully considered the three statutory relevant factors, I believe the court would have come to a different conclusion regarding the sufficiency of the evidence. In the case of harm, we have a case where the court only did the analysis of whether or not she could be considered an abused person under the statute. And if we read the order, the court seems to have cut off its analysis at that stage. But as the statute clearly articulates, the court wasn't done yet. It's not just a question of whether or not she could be considered an abused person under the statute. It's a question of should she be considered a person under this abuse statute that needs the protection of an order of profession, that an order of profession has to be issued so we can protect this person in the future. Those analysis are required by the trafficking. And in this particular case, not only did we not know what the court was articulating, it would appear from the order that the court didn't go through any of that analysis. And that's intriguing. If we look at the facts of this particular case, I would articulate to this court that the court should have come to a different conclusion with regards to the petitioner in the case. And I say that based on two reasons. And this was laid out in our unified opinion. The first, Your Honors, is that in the case of harm, the only basis for the order of protection was a finding that the petitioner was, quote, harassed. And in this case, the only basis for that was in this emotional abuse. In my preparation for today and in my preparation at the telecourt, I was intrigued that there was a substantial lack of case law regarding harassment in emotional abuse being the sole basis for an order of protection. I would argue to this court, it's a bit beyond the original intent of the order of protection. Orders of protection are embodied in order to protect the accused person so they can get away from the family or household of the accuser so they're not stuck in these relationships. That is a phrase that's been codified and regurgitated by telecourts across the state of Illinois for three decades. In this particular case, that's not really what we have here. And that's interesting. If the court had gone through the second and third analysis of 214, I think we would come to a different conclusion. Even assuming that what happened in this case rises to the level of harassment, and I'm not arguing that it does. I'm arguing to the contrary, just so we're clear, of course. I think that the court, in analyzing those second and third factors, would have to come to a different conclusion. And we see that in some of the case law that have come out since those kickoff cases, I The Wilson case, the court articulated a very different case when we're talking about the bribe substitution of the order of protection. Orders of protection are not meant to, quote, exasperate every petty argument between peoples. Well, counsel, let's talk about the elephant in the room. What about the infant? Part of the basis was that, allegedly, your client came very close to the petitioner with her vehicle to the extent that, allegedly, one of the grandchildren said, Mom tried to run Grandma over. Wasn't that part of the petition? That was part of the petition. It was not proved at trial. And I'm still glad you brought that up. Well, I know that there was this testimony that, you know, she's tried to run her before, and then that was kind of shown to not necessarily be accurate. But are you disputing that there was this alleged incident in the church parking lot? So you're saying that incident was not proved at the hearing? I'm saying, Your Honor, that the petitioner herself didn't even testify to that. When she took the stand and she testified, she articulated to the judge that she had her eyes down. She could not articulate to the court how far the car was from her physical person because she, quote, didn't see it. The only reason why she thought the car was, quote, close to her person was because she, quote, heard it. And then she articulated something more than was even in her plenary or her ex parte request for the O.P. She heard rocks flying. And she was on the stand and I crossed-examined her and I said, But ma'am, if you weren't looking at the car, how did you even know that rocks were flying? Did you see them? No, she didn't even see them. She must have heard them. That's what she testified to the court. Did the trial court make any findings regarding these specific allegations? There were three findings by the trial court, Your Honor. The three findings that were backed by the trial court were this, that there was name calling in the basement of the church, that the respondent was trying to pull the daughter away from the grandmother in an attempt to leave. That was subparagraph B of paragraph 3 of the order. And the third finding the court found was that she was driving through a tight lane of traffic faster than normal while laying on the floor. Those were the three facts that were found by the court and the sole basis for the O.R. decision. Well, this is the last one indicative of the court's thinking that maybe there was some claim that she drove in a reckless or dangerous fashion? That was never found by the court. The court never articulated that the respondent drove in a reckless or dangerous fashion. Just that she drove, quote, faster than normal through the tight parking lot. That was all. So what does that mean? I don't know, Your Honor. Great question. The trial court didn't articulate it. And in fact, the petitioner's own witness articulated that he was there, saw almost the whole thing, and didn't even know anything had occurred until the peace officer called him two days later. And I think that's very key in this case. Are you talking about the petitioner's husband or the parishioner? The parishioner. Okay. Okay. When he was on the stand, he was on the stand by the vehement, how fast was she going? And his answer was, she was going a little fast. That was his answer. When he heard it even harder, he said, well, she was going faster than I would have traveled. And then he was asked by me on cross-examination, how fast is that? Well, I had no idea. It's just faster than what I would travel. And I asked him, well, okay. Sorry, but how old are you? And he said, over the age of 18. My client, very young. What he sees to be faster than normal is his own perception. And I'll be very blunt to the court. There's no case law where such a basis is an affirmative basis for an order of protection, a domestic violence order of protection. And that's what we have here in the case at hand. These three findings of fact were the sole basis for the granting of the order of protection. There were no articulations, no minimal statutory findings by the court whether or not the order of protection was needed to prevent further abuse. Well, the court did find that the petitioner was an abused person, correct? Yes. So what can we infer from that? You can infer, I think, exactly what the court articulates in the order, that the court found her to be an abused person based upon those three facts. I'll be blunt, though. I don't believe the case law supports it. Under the current case law, harassment has rarely been the sole basis for the granting of an order of protection. And under the current body of case law, most times when harassment has been found, it's been coupled with domestic violence, physical abuse. And so if we choose not to take your view of the trial court's view of the incident in the parking lot, if we determine that, well, it appears the trial court was of the opinion that there was something inappropriate that happened, do you lose? No, ma'am. Because the case law clearly articulates, and this one particularly in regarding the marriage of Henry, that even if the trial court has sufficient basis for finding an order of protection, their failure to articulate those minimum sufficient statutory findings on the record mandated reversal. And what district is that case from? It's not the 4th District, that's what I'm getting at. Correct? Correct. So that would not be binding on us. It's up to you. I suspect that you're more familiar with the facts of Henry's denial, so would the court make prior findings in the emergency order in that case that were then also a part of the plenary order? I would not. Okay. And there is a case out there, and I apologize if I'm interrupting, but it said basically the exact opposite, just because the trial court articulated in an emergency ex parte hearing that it found sufficient basis to grant an ex parte O.P., that in no way should be part of our analysis for the final plenary O.P. Now, it was one case that I found that touched upon that exact issue, Judge, and I found it interesting. But the fact of the matter is we still go back to the original problem that we have in this case, and that's that the trial court failed to articulate the minimum statutory findings that's required by the statute. Was there anything filed alerting the trial court of its failure after it issued the order? No. Any type of motion to reconsider or anything like that? No. Okay. I have two questions in following up to your last comment. One is, is there anywhere in the record that's explained why the standardized orders weren't used in this case? No, sir. All right. And there's nothing about an emergency order, a plenary order, where a court can't make a rule at the plenary stage that the prior orders are in full force and effect if the court were to make that finding? Or is there? There is one case out there that says that. What case is that? I don't see that. Well, finish your thought. One case, what does that case say? I'm sorry, I can't recall the name of the case. But the court said that in the ruling on the plenary order of protection, the trial court specifically articulated that we're going to continue the emergency order of protection in full force and effect. And I think in that case it was even a bit much hassle to the case at hand because they were still kind of in the middle of it. And is that that non-court district case that Justice Holder White was in? No. Okay, thank you. Thank you, sir. Thank you, counsel. Mr. Sheets? May I please support the case, counsel? Your Honor, we're here today, we've spent a lot of time talking about what I think the central issue of this appeal is really about. And that issue is whether an order of protection that lacks the specific statutory findings that are required by statute mandates reversal. And notwithstanding the fact that the record may reflect that an order of protection was warranted under the standard of review on appeal. Now, the standard of review here is manifest the way that the evidence standard is established by the best. Under that standard, the only question that we ask of your honors is whether the conclusion of the trial court is clearly opposite of what the trial court found. And whether it was unreasonable, arbitrary, or fanciful. And so we're not going to open the door and re-litigate issues with the fact that were already established at the trial court. We're not going to address credibility of witnesses. I believe there were disputes as to certain facts in the record, but that's not what we're asking here. The only question that we need to ask of your honors is whether in light of the evidence in the record of the events that unfolded on February 24th, 2019. Whether it was unreasonable or the conclusion that the petitioner, Cheryl Steinauer, was harassed as defined under the Domestic Violence Act. In light of the events that unfolded at St. Patrick's Cathedral in Havana that day. Your honors, I disagree with counsel with respect to characterizing this as a petty argument. Maybe if some of the events are viewed in isolation, I could see where that argument could come from. But when viewing the events in the totality of the circumstances, the remarks made in the church, the pulling of the child away from the petitioner. And then the most serious of which, which your honors have already alluded to, the events in the parking lot. I believe it's clear that this rises above the level of petty argument when you have essentially a motorized battering ram coming around the corner in a parking lot and almost hitting an individual. That clearly falls within the definition of harassment, which is knowing conduct that is not necessary to accomplish a reasonable person. That would cause a reasonable person emotional distress and thus cause a reasonable person emotional distress. And that's what happened in this case. So counsel, I asked opposing counsel about two things. The findings that were made related to the emergency order protection and then the liberal construction we are to utilize in making determinations under this statute. I'll ask you the same. How do those two things impact our decision here? Your honor, I think the findings under 214 and the finding that someone is an abused person is essentially a balancing act here. The central purpose of the Domestic Violence Act is to prevent victims of domestic violence from being further abused by their abusers. Now, the statute has been amended several times to require that the trial court enumerate why it made those findings. And I think those statutory findings under 214C are there to ensure that while it's important to protect victims of domestic abuse, it is similarly just as important to make sure that circuit courts don't enter orders of protection for no reason at all. Please explain why you entered this order of protection. And to that point, I don't believe that omitting that specific language in the order is any evidence that those factors weren't considered. Indeed, a circuit court could have considered those factors, but since we don't have a pre-printed form with checkboxes and things of that nature, it could have simply been overlooked. The central issue on an order of protection in the hearing is whether or not the petitioner is an abused person as defined under the act. And the circuit court found that the petitioner met her limit with respect to that issue. So should we consider the findings made by the circuit court when issuing the ex parte order? I believe you can. I believe the procedural posture of this case in which there was a motion to reconsider and the hearings were somewhat brought together at the same time, I believe that it's close enough, for lack of a better term, that the waters were muddied enough and that in bringing the motion to reconsider, it somewhat opened the door to allow those findings to transfer over. And so I would argue that yes, you can consider those factors in reviewing the plenary order of protection and whether those findings transfer. So it's basically your position that while we don't have the mention of the specific factors, the record does demonstrate that the trial court considered these things. And so I guess the question becomes, when we know that we're to liberally construe this, should we dismiss the order based on a technicality even though there's evidence in the record to support the order? I don't believe that Your Honor should dismiss an order based on a technicality due to the purpose of this act. And setting that precedent would be such a harsh result for not only this petitioner but for petitioners from this day forward in the event that they are otherwise successful but for a few words being placed on an order and their protection that they were afforded is all of a sudden disinitiated because there's this technical language not on the order. It turns into a form over substance type argument and a technicality and a substantial injustice to a party that may really need this protection. And so I would argue that these orders should not be dismissed flat out based on a technicality. And one compromise may be, and a way to balance this, is to allow the trial court to remand the instructions to make those express written findings. And I'm arguing that the order simply be affirmed, but I think that that is also a... Can you make that suggestion in your brief as well? Yes, Your Honor. Do you know, I know Justice Kavanaugh asked earlier, why weren't they using the forms? Your Honor, I don't know. It was in Mason County, Illinois, and sometimes rural counties maybe don't get the forms as quickly as other counties do. I honestly have no knowledge as to that. I know that the decision was taken under advisement. And beyond that, I have no knowledge as to why the form was not used. And so, to conclude, to the burden of proof issue, I believe that the petitioner met the burden of proof in that it's so deferential to the trial court that the order should be affirmed. We didn't really address the argument as to whether this was used for an improper purpose on behalf of the petitioner. And I'll simply stand on my argument in my written brief. In which, with respect to the argument, the 214C requirements, we would ask that the order be affirmed due to the procedural posture of this case in the emergency order of protection or in the alternative that the positive remand of the trial court with instruction is to make this express their assignment. Thank you. Thank you, counsel. Any rebuttal, Ms. Watson? Just to have an honest review. It is that I could not recall, was Mullen being called? No. Thank you. And that is a court procedure case. And that case specifically articulated that because that particular trial court specifically referenced those findings in the order of protection, that it was containing the emergency order of protection in full force and effect, that that verdict was sufficient to satisfy the statute. As I articulated previously, you don't even have that in this case. Any changes between the ex parte order and the plenary order? Were they essentially the same order? No. Here or in that case? In this case, yes. This case is the same, I believe. No additional restrictions or staying away from school or anything like that? I don't recall off the top of my head. My recollection is that the form was used for the emergency order of protection, and the emergency order of protection had a number of boxes checked that my client was restrained from harassment, intimidation, vocal deprivation, and so on and so forth. It included the petitioner's home for work and so on and so forth. It was a bit more expansive than the trial order. The trial order only referenced a stay away order. It was a simple footage. So you're saying the plenary order was less restrictive than the emergency order? Mm-hmm. And didn't they make some type of tweak with respect to being able to be at events for the kids? It was. Okay. Turning back, as the Plenary Council articulated, I didn't have time on the conference round to really articulate with regards to more of the sufficiency of the evidence and the improper purpose that was utilized for the order of protection. But one of the cases that is in the prodigy of whether or not the harassment is a sufficient basis for the plenary order of protection, particularly as it relates to the sole definition of emotional distress, in the particular case, the court there really took a look at why that petitioner was asking for the order of protection. And I think that's key, because in this particular case, not only do we have the statutory mental requirement issue that I think is critical to the court, and also we have the sufficiency manifest way of the evidence, but we also have the issue that we definitely see a lot in this particular case, in that why the petitioner was asking for the OK. In this case, the petitioner was asking for the OK two days later, when her son has a child, in his physical custody. And her emergency order of protection talked about how she wanted visitation rights. And she really didn't like my client. And... Did she seek any visitation rights as part of the order of protection? She articulated in her plenary... No, I mean in her request for the OP. You know how you can actually put on the OP that you're requesting visitation. You can ask for custody. Did she utilize any of those? As a grandparent, no, but she did articulate in her ER emergency request that she didn't think it was fair how my client kept the children from her. But she asked the court for no relief with respect to those concerns. Is that true? I mean, if she did, what relief did she ask for? I don't recall if she asked that. I don't think she did, Judge. But I don't want to say with a certainty based on recollection. I don't think she did. But I do find it relevant to this court's inquiry that in her order of protection, her request for an emergency, that numerous things were going on that had nothing to do with the use of life. It had to do with a phone that was up for fraud against her son. And she was implicated in an act of motion. And she was referencing it in her order of protection. And she didn't like the daughter-in-law. She didn't like the citation arraignment. She didn't like, basically, the mother having control of the children. And that's replete in the facts found by the trial court. You've got a mom trying to go out the back door, and you've got grandma grabbing the kid. And somehow that's the basis, one of three factual bases, for the finding of an order of protection against a mom. Of course the mom has a right. Was there testimony that the child approached the grandmother and went to hug the grandmother, and then your client pulled her away and said, not on my parenting time? Wasn't there some evidence to that extent? Not quite, Judge. What was it? The evidence from the petitioner articulated that she went into the well where Richard was having his service, and she followed the children and was walking up to them. And then she walked up to them, was hugging the child. And my client testified that she began to pull the child away to the back exit of the church. And that's why she was pulling the child back to her person, is that grandmother did not have permission to take the child away from her person, which, of course, she had a right to. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.